### SMITH *v.* HALKYARD and others.

*(Circuit Court, D. Rhode Island.   1883.)*

1. PATENTS FOR INVENTIONS—PRIORITY OF INVENTION—EFFECT OF DECISION OF PATENT-OFFICE.

    The decision of the patent-office upon an interference proceeding is sufficient to entitle the successful party, as against the defeated party or his privies, to a preliminary injunction upon the question of priority of invention raised in a subsequent suit.

2. SAME—NOT AN ESTOPPEL—INJUNCTION.

    While the defeated party to an interference is not estopped in another action from raising the question of want of novelty in the invention, yet if he had knowledge of the condition of the art at the time of his application, a want of novelty in the invention must be clearly apparent, or a preliminary injunction will be granted.

3. SAME—WANT OF GOOD FAITH.

    In such a case it has been held, where there is want of good faith, the court will grant an injunction.

4. SAME—PATENTS NOS. 259,597 AND 232,561 SUSTAINED.

    Patent No. 259,597, granted to Stephen N. Smith, June 13, 1882, for a machine for making lacing-hooks for machines, compared with patent No. 102,-195, granted to Solomon W. Young, April 19, 1870, and the Towne patent, reissued August 9, 1881, and numbered 9,837, and *held* not anticipated thereby. Patent No. 102,195 *held* valid, and defendant enjoined from constructing and using either of said patents.

In Equity.   Motion for a preliminary injunction.

*John L. S. Roberts, George L. Roberts,* and *Oscar Lapham,* for complainant.

*Wilmarth H. Thurston* and *Benj. F. Thurston,* for defendants.

Before LOWELL and COLT, JJ.

COLT, J.   This motion is based upon an alleged infringement by the defendants of two letters patent issued to the complainant—No. 259,597, dated June 13, 1882, covering a machine for making lacing-hooks for shoes, and No. 232,561, dated September 21, 1880, for lacing-hook stock.

The complainant made application for the machine patent July 28, 1879.   On the day it was allowed, the defendant Halkyard ap-

plied for a patent upon the same machine, his application being a copy of that filed by Smith in the Canada patent-office. An interference was declared, testimony was taken by both sides, and hearings had before the primary examiner, the board of examiners, and the commissioner of patents. A decision was rendered by each tribunal in favor of Smith as the first inventor. During this contest Halkyard filed a motion to dissolve the interference on the ground of prior public use of the machine for more than two years, which was overruled. The bill alleges that in 1879 Halkyard associated himself with the defendant Church, and that they have since, under the name of the Halkyard Manufacturing Company, (also made a party defendant,) constructed and used machines embodying the complainant's invention. The decision of the patent-office upon an interference proceeding is sufficient to entitle the successful party, as against the defeated party or his privies, to a preliminary injunction upon the question of priority of invention raised in a subsequent suit. *Hanford* v. *Westcott,* 16 O. G. 1, 181; *Holliday* v. *Pickhardt,* 12 FED. REP. 147; *Peck, Stow & Wilcox Co.* v. *Lindsay,* 18 O. G. 63.

Halkyard now contends that the patent is void for want of novelty. While the defeated party to an interference is not estopped in another action from raising the question of want of novelty in the invention, yet if he had knowledge of the condition of the art at the time of his application, which the testimony here discloses, a want of novelty in the invention must be clearly apparent, or a preliminary injunction will be granted. *Peck, Stow & Wilcox Co.* v. *Lindsay,* 18 O. G. 63. In such a case it has been held that where there is want of good faith the court will grant an injunction. *Greenwood* v. *Bracher,* 1 FED. REP. 856.

We are not satisfied upon the evidence of a want of novelty in the complainant's patents. While it is true that machines existed for making lacing-hooks, eyelets and eyelet stock, shoe-stays and shoe-stay stock, yet we do not find any machine composed of the same combination of elements or devices as is found in the Smith patent, nor do we find, in any prior patents referred to, lacing-hook stock of the character described in the Smith patent. In the Smith machine a narrow strip of metal with tubular necks at regular intervals is introduced to a guide and carried forward by the action of a finger, which engages in each tubular neck, to the punches. The first punch scores the tubular neck so that the ends will split and turn down evenly in the shoe; the second punch indents the metal contiguous to the neck, which forms when bent over the head of the lacing

hook; the third punch cuts out the blank, which consists of the tubular neck and contiguous indentation. The blank now drops into a carrier slide, which moves backward. A presser-foot to hold the blank in place descends, and the slide carries the blank under it. A fixed tongue mounted on the bed of the machine enters the notch in the end of the carrier to give support to the blank after it has been carried backwards. The presser-foot rises and an anvil advances over the tubular end of the blank. A vertical rod then rises from underneath and bends the end of the blank, which forms the head of the lacing-hook upwards; a horizontal slide opposite the anvil then advances and bends the head of the lacing-hook over upon the anvil; at the same time indents the back, the slides retreat, and the lacing-hook falls from the machine.

The first claim in the patent is for a series of punches for scoring, indenting, and cutting, jointly with the feed mechanism arranged to move the stock from the first two punches to the last. The defendants contend that this was anticipated by certain patents granted to Solomon W. Young, and especially patent No. 102,195, dated April 19, 1870, which embraced the combination of two prior patents, issued to him, No. 65,035, May 21, 1867, machine for making eyelets, and No. 65,036, May 21, 1867, machine for making eyelet stock. But it seems to us that there are differences of a material character between the Smith and Young machines.

In the Smith machine there is one feeding device; in the Young machine, four. The Smith machine has a prismatic punch for scoring the inside of the eyelet barrel, unlike either of the drawing or indenting punches in the Young machine. The Smith machine consists of one feed mechanism combined with a series of punches, which produce a blank composed of a scored eyelet barrel and a contiguous indentation, which blank, when operated upon by the other parts of the machine, becomes a lacing-hook. The Young machine consists of a combination of several punches, each with a separate feed mechanism, the product of which is an eyelet with a smooth barrel. Without entering into any fuller discussion at this time, we feel sufficiently satisfied for the purpose of this motion, that the combination embraced in the first claim of Smith was not anticipated by the Young patents.

The second claim in the Smith patent is for a combination of the cutting punch, the carrier, the sliding anvil, and the vertically and horizontally moving slides arranged to act successively, and bend the blank over the anvil. It is urged that this claim was anticipated by

the Towne patent, reissued August 9, 1881, and numbered 9,837. A comparison, however, between the two machines discloses a widely-different construction. This is apparent upon examination, and it is fully and clearly set out in the affidavit of the inventor, Towne. In place of two rods in the bending mechanism of the Smith machine, the process of bending the blank in the Towne patent is accomplished by five rods operating on the circumference of a revolving circular table. The carrier in the Smith machine holds the blank during the entire process of bending; in the Towne patent it simply pushes the blank into other mechanism for holding during the process of bending. In the Smith patent the blank is cut out by a punch of proper shape, and then drops into the carrier. In the Towne patent the cutting punch, which is dome shape at one end, acts in combination with an upward moving plunger, which strikes up one end of the blank in the form of a dome; spring grippers strip the blank from the retreating cutting punch and the blank is held upon a way or road through which a follower moves and pushes it to the bending mechanism.

With such differences of construction between the two machines, and without mentioning others, it can hardly be said, we think, that the second claim of Smith was anticipated by Towne.

The foregoing reasoning is applicable to the third claim of the Smith patent, which relates to the bending mechanism in the machine. The fourth, fifth, and sixth claims are not pressed at this hearing. The seventh claim covers the feeding devices in combination with the scoring and cutting punches. It is contended that this was anticipated by the Young patent, No. 102,195, before referred to.

In the Young patent a spring is inserted in the dye-hole of each of the first two dies, which, by pressing against the bottom of the eyelet, raises it and clears it from the female die, otherwise there would be an obstruction to feeding the stock along. In the Smith machine a spring is inserted in a groove along which the stock is first fed. The spring in the Young machine could not perform the same function in the Smith machine, because the stock fed into the Smith machine has the bottom of the eyelets punched out, so that the spring would tend to enter the opening at the bottom of the eyelet and wedge the same. By inserting a flat spring in the groove forming part of the feeding device, Smith constructed a spring-clearer, which would work upon stock having the bottom of the cup or eyelet cut out. While it may be said, perhaps, that this claim is less free from

doubt than the others we have considered, we do not feel warranted in holding that it is clearly void for want of novelty.

The eighth claim is for a combination of the indenting devices, the cutting devices, the carrier and bending devices, operating upon stock having tubular necks, whereby the blank is folded across its middle into a U form, and it is said that all this is found in the Towne patent. We are of the opinion, however, as already stated, that the mechanism of the Towne machine is very different.

The Smith stock patent, No. 232,561, consists of a narrow strip of metal provided with a series of alternate necks and indentations, and stock so constructed is found in no other patent to which we have been referred. That the defendants use stock of this character in the production of the lacing hooks made by them we think is free from doubt.

Injunction granted.